## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| MITSUI SUMITOMO INSURANCE CO., LTD. (a foreign corporation) a/s/o SHARP ELECTRONICS CORPORATION ) ) ) ) | No: FILED: SEPTEMBER 2, 2008 08CV4968 JUDGE KENDALL |
| Plaintiff, ) | Judge MAGISTRATE JUDGE KEYS |
| v. ) | EDA |
| ROADWAY EXPRESS, INC. ) | Magistrate Judge: |
| Defendant. ) | |

## COMPLAINT

Plaintiff, MITSUI SUMITOMO INSURANCE CO., LTD. (a foreign corporation) (herein "MITSUI") a/s/o SHARP ELECTRONICS CORPORATION (herein "SHARP"), by and through its attorneys, John F. Horvath, Duane C. Weaver and Renata M. Koleda of HORVATH & WEAVER, P.C., for its Complaint against defendant ROADWAY EXPRESS, INC. ("ROADWAY"), alleges and states as follows:

### I.
### JURISDICTION AND VENUE

1.       Plaintiff brings this lawsuit pursuant to 49 U.S.C. § 14706 (the Carmack Amendment) against defendant ROADWAY alleging that defendant was, at all times relevant, an interstate motor carrier and/or freight forwarder in relation to three Subject Shipments transported under separate bills of lading, where the value of at least one of the three shipments, the June 27, 2007 ABC Appliance, Inc. Shipment exceeded $10,000.00, exclusive of interest and costs.  Consequently, this Court has original jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337.

2.       This Court also has pendent jurisdiction as to plaintiff's claims for the June 25,

2007 ABC Appliance, Inc. Shipment and the Avad Florida Shipment under 28 U.S.C. § 1367(a)

because plaintiff's claims arise out of the same transaction or occurrence as the claim for the

June 27, 2007 ABC Appliance, Inc. Shipment.

3.      Venue is proper against ROADWAY pursuant to 28 U.S.C. § 1391(b)(2) and (c)

since plaintiff's claims for the June 27, 2007 ABC Appliance, Inc. Shipment and June 25, 2007

ABC Appliance, Inc. Shipment arise out of the non-delivery of television sets that defendant

received from SHARP's facility in Romeoville, Illinois.  Additionally, venue is proper against

ROADWAY since defendant transacted and continues to transact business in Illinois and within

the Northern District of Illinois in accordance with 735 ILCS 5/2-209(1).

4.      Venue is also proper against ROADWAY pursuant to 49 U.S.C. § 14706(d)(1)

and (d)(2) because ROADWAY was the delivering carrier and/or carrier responsible for the loss

of the televisions in the Subject Shipments.

## II.
## FACTS COMMON TO ALL COUNTS

### A.      The Parties

5.      At all times relevant, plaintiff, MITSUI was a foreign insurance corporation

organized and existing under the laws of Japan, and had in effect a policy of insurance covering

goods in transit for the benefit of SHARP.

6.      Plaintiff sues herein as subrogated insurer of SHARP.  Attached hereto as Group

Exhibit "A" are the Subrogation Receipts for the Subject Shipments.

7.      At all times relevant, plaintiff's subrogor, SHARP, was a manufacturer and

distributor of electronic products, was the owner of the Subject Shipments, was a New York

corporation and maintained an office at Sharp Plaza in Mahwah, New Jersey.

8.      At all times herein relevant, ROADWAY was and is a Delaware Corporation with

its principal place of business in Ohio and transacted business in the state of Illinois and within this Court's jurisdiction.

9.    At and during all times hereinafter mentioned, ROADWAY was and is engaged and/or held itself out to SHARP as an interstate motor carrier and/or freight forwarder of merchandise for hire.

### B.    The Subject Shipments

10.    This is a claim involving the loss of three shipments of cargo during motor carrier transit by ROADWAY (the "Subject Shipments").

### 1.    The June 27, 2007 ABC Appliance, Inc. Shipment

11.    On or about June 27, 2007, ROADWAY through its employees and/or agent driver received in good order, quantity and condition a shipment consisting of 10 televisions, consigned to ABC Appliance, Inc. in Pontiac, Michigan (the "June 27, 2007 ABC Appliance, Inc. Shipment"). Attached as Exhibit "B" hereto is a true and accurate copy of the Bill of Lading for the June 27, 2007 ABC Appliance, Inc. Shipment (Bill of Lading No. 00740000000075191).

12.    ROADWAY received a copy of Exhibit "B" on or about June 27, 2007.

13.    ROADWAY prepared and issued ROADWAY PRO NO. 318-757327-2 for the transport of the June 27, 2007 ABC Appliance, Inc. Shipment.  Attached as Exhibit "C" is a true and accurate copy of ROADWAY PRO NO. 318-757327-2.

14.    ROADWAY did not deliver 5 of the 10 televisions indicated on Exhibit "B" to ABC Appliance, Inc., the intended consignee.  *See* Exhibit "C."

15.    Due to ROADWAY's failure to deliver the 5 televisions, SHARP was obligated to credit and did credit ABC Appliance, Inc. in the amount of $14,241.60, representing the actual value of the 5 non-delivered televisions.  Attached as Exhibit "D" hereto is a true and accurate

copy of the Credit Memo SHARP issued to ABC Appliance, Inc. for non-delivery of the 5 televisions.

### 2.    The June 25, 2007 ABC Appliance, Inc. Shipment

16.    On or about June 25, 2007, ROADWAY through its employees and/or agent driver received in good order, quantity and condition a shipment consisting of 40 televisions, consigned to ABC Appliance, Inc. in Pontiac, Michigan (the "June 25, 2007 ABC Appliance, Inc. Shipment"). Attached as Exhibit "E" hereto is a true and accurate copy of the Bill of Lading for the June 25, 2007 ABC Appliance, Inc. Shipment (Bill of Lading No. 00740000000066144).

17.    ROADWAY received a copy of Exhibit "E" on or about June 25, 2007.

18.    ROADWAY prepared and issued ROADWAY PRO NO. 318-757245-7 for the transport of the June 25, 2007 ABC Appliance, Inc. Shipment.  Attached as Exhibit "F" is a true and accurate copy of ROADWAY PRO NO. 318-757245-7.

19.    ROADWAY did not deliver 8 of the 40 televisions indicated on Exhibit "E" to ABC Appliance, Inc., the intended consignee.  *See* Exhibit "F."

20.    Due to ROADWAY's failure to deliver the 8 televisions, SHARP was obligated to credit and did credit ABC Appliance, Inc. in the amount of $9,696.80, representing the actual value of the 8 non-delivered televisions.  Attached as Exhibit "G" hereto is a true and accurate copy of the Credit Memo SHARP issued to ABC Appliance, Inc. for non-delivery of the 8 televisions.

### 3.    The Avad Florida Shipment

21.    On or about October 17, 2006, ROADWAY through its employees and/or agent driver received in good order, quantity and condition a shipment consisting of 24 televisions, consigned to Avad Florida in Orlando, Florida ("Avad Florida Shipment").  Attached as Exhibit

"H" hereto is a true and accurate copy of the Bill of Lading for the Avad Florida Shipment (Bill of Lading No. 308264).

22.     ROADWAY received a copy of Exhibit "H" on or about October 17, 2006.

23.     ROADWAY prepared and issued ROADWAY PRO NO. 931-163118-5 for the transport of the Avad Florida Shipment.  Attached as Exhibit "I" is a true and accurate copy of ROADWAY PRO NO. 931-163118-5.

24.     ROADWAY did not deliver 15 of the 24 televisions (11 Model Nos. LC20S5U, 4 Model Nos. LC32D50U) indicated on Exhibit "H" to Avad Florida, the intended consignee.  *See* Exhibit "I."

25.     Due to ROADWAY's failure to deliver the 15 televisions, SHARP was obligated to credit and did credit Avad Florida in the amount of $9,255.89, representing the actual value of the 15 non-delivered televisions.  Attached as Exhibit "J" hereto is a true and accurate copy of the Credit Memo SHARP issued to Avad Florida for the non-delivery of the 15 televisions.

### C.     Actions Subsequent to the Subject Shipments

26.     On November 30, 2007, SHARP submitted a claim in writing to ROADWAY regarding the June 27, 2007 ABC Appliance, Inc. Shipment, demanding payment for the invoice value of the 5 non-delivered televisions ($14,241.60).  A true and accurate copy of SHARP's written claim for the 5 non-delivered televisions is attached as Exhibit "K" hereto.

27.     ROADWAY received SHARP's written notice of claim for the non-delivery of the 5 televisions from the June 27, 2007 ABC Appliance, Inc. Shipment (Exhibit "K") on or about November 30, 2007, but later rejected the demand.

28.     SHARP never received any payment from ROADWAY for the non-delivery of the 5 televisions from the June 27, 2007 ABC Appliance, Inc. Shipment.

29.     On November 30, 2007, SHARP submitted a claim in writing to ROADWAY regarding the June 25, 2007 ABC Appliance, Inc. Shipment, demanding payment for the invoice value of the 8 non-delivered televisions ($9,696.80).  A true and accurate copy of SHARP's written claim for the 8 non-delivered televisions is attached as Exhibit "L" hereto.

30.     ROADWAY received SHARP's written notice of claim for the non-delivery of the 8 televisions from the June 25, 2007 ABC Appliance, Inc. Shipment (Exhibit "L") on or about November 30, 2007, but later rejected the demand.

31.     SHARP never received any payment from ROADWAY for the non-delivery of the 8 televisions from the June 25, 2007 ABC Appliance, Inc. Shipment.

32.     On August 13, 2007, SHARP submitted a claim in writing to ROADWAY regarding the Avad Florida Shipment, demanding payment for the invoice value of the 15 non-delivered televisions ($9,255.89).  A true and accurate copy of SHARP's written claim for the 15 non-delivered televisions is attached as Exhibit "M" hereto.

33.     ROADWAY received SHARP's written notice of claim for the non-delivery of the 15 televisions from the Avad Florida Shipment (Exhibit "M") on or about August 13, 2007, but later rejected the demand.

34.     SHARP never received any payment from ROADWAY for the non-delivery of the 15 televisions from the Avad Florida Shipment.

## COUNT I - CARMACK AMENDMENT CLAIM

35.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 34 of its Complaint as if fully set forth at length herein as paragraph 35.

36.     At all times relevant herein, there was in effect 49 U.S.C. §14706 (the Carmack Amendment), which provides in pertinent part as follows:

**(a) General Liability. -**

   **(1) Motor carriers and freight forwarders.—** A carrier providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 shall issue a receipt or bill of lading for property it receives for transportation under this part. That carrier and any other carrier that delivers the property and is providing transportation or service subject to jurisdiction under subchapter I or III of chapter 135 or chapter 105 are liable to the person entitled to recover under the receipt or bill of lading. The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702. Failure to issue a receipt or bill of lading does not affect the liability of a carrier. A delivering carrier is deemed to be the carrier performing the line-haul transportation nearest the destination but does not include a carrier providing only a switching service at the destination.

37.    At all times hereinafter mentioned, ROADWAY was operating and/or holding itself out to SHARP as a motor carrier and/or freight forwarder in relation to the Subject Shipments.

38.    ROADWAY received the Subject Shipments in good order, condition and quantity.

39.    ROADWAY failed to deliver the Subject Shipments to the intended consignees in the same good order, condition and quantity as it received the Subject Shipments as it was obligated to do under the Carmack Amendment.

40.    As a result of the shortages and damages to SHARP's goods caused by ROADWAY's failure to make proper deliveries pursuant to the Carmack Amendment, formerly 49 U.S.C. §11707 as to all carriers, now 49 U.S.C. §14706 as to motor carriers, plaintiff was required to pay and did pay SHARP no less than $33,194.29 under the policy it issued to SHARP.  Group Exhibit "A."

41.    By reasons of these premises, MITSUI and SHARP have sustained damages in

the amount of at least $33,194.29 plus freight charges and costs.

WHEREFORE, plaintiff MITSUI SUMITOMO INSURANCE CO., LTD., requests that the Court enter judgment in plaintiff's favor and against defendant ROADWAY EXPRESS, INC. in an amount no less than $33,194.29 plus prejudgment interest and such other relief as the Court deems appropriate under the circumstances.

## COUNT II – BREACH OF TRANSPORTATION AGREEMENT

42.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 34 of its Complaint as if fully set forth at length herein as paragraph 42.

43.     On or about May 1, 2003, SHARP and ROADWAY entered into a Transportation Agreement ("the Agreement") under which ROADWAY, in consideration of certain specified freight charges, agreed to furnish motor carrier and related services to SHARP for the transportation of SHARP's goods. Attached as Exhibit "N" hereto is a true and accurate copy of the Agreement.

44.     At all times on and after May 1, 2003, including all times relevant to this Complaint, ROADWAY performed services for SHARP under the Agreement, including, without limitation, furnishing motor carrier and related services to SHARP for the transportation of SHARP's goods.

45.     At all times on and after May 1, 2003, including all times relevant to this Complaint, SHARP tendered shipments to ROADWAY and made payments to ROADWAY in accordance with rates and charges as provided in the Agreement.

46.     Pursuant to Paragraph 2(b) of the Agreement, ROADWAY agreed as follows:

CARRIER [ROADWAY] shall promptly and efficiently receive, transport and deliver safely and with reasonable dispatch and without delay; [*sic*] the goods entrusted to it hereunder, whether received from SHIPPER [SHARP] or from Third Parties at the request of the SHIPPER [SHARP]. CARRIER [ROADWAY] agrees to expedite shipments when so requested by SHIPPER [SHARP] and

8

deliver them in like good order and condition to the consignee listed in the contracts of carriage.

47.     Pursuant to Paragraph 7(a) of the Agreement, ROADWAY agreed as follows:

Carrier [ROADWAY] agrees that, in the transportation of all goods hereunder, it will assume and does assume, the liability of an interstate common motor carrier, as provided in 49 USC 11707, such liability to exist from the time of receipt of any said goods by CARRIER [ROADWAY] until proper delivery has been made.

48.     Pursuant to Paragraph 7(b) of the Agreement, ROADWAY agreed as follows:

CARRIER'S [ROADWAY'S] liability shall be for the released value of $25 per pound for the goods lost or damaged in transit with a maximum of $100,000 per shipment, whether or not lost or damaged enroute to a purchaser.  Any limitation of liability must be agreed to in writing by SHIPPER [SHARP] and CARRIER [ROADWAY] and included as an Appendix or Addendum hereto.  CARRIER [ROADWAY] further agrees that no merchandise, damaged or otherwise, may be disposed of on the salvage market without the expressed written consent of SHIPPER [SHARP].

49.     Pursuant to Paragraph 7(f) of the Agreement, ROADWAY agreed as follows:

CARRIER [ROADWAY] shall notify SHIPPER [SHARP] immediately by telephone, facsimile or other telecommunications of any accident, theft, hijacking, delay, damage or shortage which impair the safe and prompt delivery of the goods in its control.  CARRIER [ROADWAY] shall immediately notify SHIPPER [SHARP] by telephone, facsimile or other telecommunications of any refused, damaged or On Hand freight and request additional instructions regarding delivery, storage or disposition of the available goods.

50.     Pursuant to Paragraph 7(i) of the Agreement, ROADWAY agreed as follows:

All claims for loss or damage must be filed in writing with CARRIER [ROADWAY] within nine (9) months of shipping date.  CARRIER [ROADWAY] must notify in writing, receipt of all claims within thirty (30) days of filing.  All claims so filed, must be settled by CARRIER [ROADWAY] within ninety (90) days of receipt.

51.     Paragraph 7(k) of the Agreement further provided:

If either party is successful in recovering on a cargo claim in a court of law or arbitration proceeding, Prevailing party shall be entitled to recover all of its costs incurred in collecting its claim, including reasonable attorney's fees and interest from the date of delivery or scheduled delivery of the shipment.

52.    To the extent ROADWAY was not a motor carrier and/or freight forwarder of the Subject Shipment and/or was not otherwise statutorily subject to the Carmack Amendment, ROADWAY agreed to assume the same liability for the shipment as a carrier subject to the Carmack Amendment, and is therefore, liable to MITSUI as a carrier subject to the Carmack Amendment would be.  Exhibit "N," paragraph 2(b).

53.    ROADWAY breached the Agreement by failing to deliver 5 of the 10 televisions from the June 27, 2007 ABC Appliance, Inc. Shipment to the intended consignee.

54.    ROADWAY breached the Agreement by failing to deliver 8 of the 40 televisions from the June 25, 2007 ABC Appliance, Inc. Shipment to the intended consignee.

55.    ROADWAY breached the Agreement by failing to deliver 15 of the 24 televisions from the Avad Florida Shipment to the intended consignee.

56.    Alternatively and/or additionally, ROADWAY breached the Agreement by failing to notify, in writing, receipt of the claims for the Subject Shipments within thirty (30) days of SHARP's written notification, as required under section 7(i) of the Agreement.

57.    Alternatively and/or additionally, ROADWAY breached the Agreement by failing to settle SHARP's claims for the Subject Shipments within ninety (90) days of SHARP's written notification, as required under section 7(i) the Agreement.

58.    SHARP fully performed all the obligations required of it under the Agreement.

59.    As a result of the shortages and damages to SHARP's goods caused by ROADWAY's failure to make proper deliveries pursuant to the Agreement, plaintiff was required to pay and did pay SHARP no less than $33,194.29 under the policy it issued to SHARP.  Group Exhibit "A."

60.    ROADWAY's breach has resulted in MITSUI and SHARP sustaining damages in

the amount of at least $33,194.29 plus freight charges and costs.

      61.    Pursuant to the Agreement, ROADWAY is also liable to SHARP for its costs in collecting its claim, including reasonable attorneys' fees and interest from the date of delivery or intended delivery.  Exhibit "N," paragraph 7(k).

      WHEREFORE, plaintiff MITSUI SUMITOMO INSURANCE CO., LTD., requests that the Court enter judgment in plaintiff's favor and against defendant ROADWAY EXPRESS, INC. in an amount no less than $33,194.29 plus prejudgment interest, costs, attorney's fees, interest and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

MITSUI SUMITOMO INSURANCE CO., LTD. a/s/o SHARP ELECTRONICS CORPORATION

By:  /s/ Duane C. Weaver
    One of its Attorneys

John F. Horvath
Duane C. Weaver
Renata M. Koleda
HORVATH & WEAVER, P.C.
10 South LaSalle Street, Suite 1400
Chicago, Illinois 60603
Phone:    312.419.6600
Facsimile:  312.419.6666

# GROUP EXHIBIT "A"

Our Ref:  NYC07-168581
Sharp Ref:  60927

## **SUBROGATION RECEIPT**

MITSUI SUMITOMO REF. NO.  _____

| | |
|---|---|
| ☐**VESSEL** <u>ROADWAY</u> | **POLICY NO.** <u>H97-151423</u> |
| **VOYAGE** <u>Romeoville/Pontiac</u> | **NAMED ASSURED**  <u>Sharp Electronics Corp.</u> |
| **B/L (s) NO.** <u>3187573272</u> | **AMOUNT OF LOSS** <u>$14,241.60</u> |

**To: MITSUI SUMITOMO INSURANCE CO. LTD.**

Dear Sirs:

In consideration of your paying me/us the above claim amount in full satisfaction of my/our claim in connection with the above mentioned goods (the Goods), I/we acknowledge that you are subrogated to all my/our rights and remedies in and in respect of the goods as provided by the applicable law and practice state in the Contract of Insurance to govern liability for and settlement of claims.  In the case of total loss, you are entitled, at your option, to take over my/our interest in whatever may remain of the goods it being understood that my/our delivery to you of the document of title relating to the goods shall not be construed as an exercise of such option.

I/W also record that you have authority to use my/our name to the extent necessary effectively to exercise all or any of such rights and remedies; that I/we will furnish you with any assistance you may reasonably require of me/us when exercising such rights and remedies on the understanding that you will indemnify me/us against any liability for costs, charges, and expenses arising in connection with any proceedings which you may take in my/our name in the exercise of such rights and remedies.

- DESCRIPTION OF GOODS -

10 CARTONS TVS

RCVD MAR05'08 AM10:02

CLAIMANT: _<u>Sharp Electronics Corp</u>_

SIGNATURE: _C Sas_

BY: _Chris Sas_

TITLE: _Manager_

DATED: _2/12_  20 08

Our Ref:   NYC07-165921
Sharp Ref:   60928

## SUBROGATION RECEIPT

MITSUI SUMITOMO REF. NO.    _____

| | |
|---|---|
| ☐VESSEL ROADWAY _____ | POLICY NO. H97-151423 _____ |
| VOYAGE Romeoville/Pontiac _____ | NAMED ASSURED   Sharp Electronics Corp. _____ |
| B/L (s) NO. 3187572457 _____ | AMOUNT OF LOSS $9696.80 _____ |

To:  **MITSUI SUMITOMO INSURANCE CO. LTD.**

Dear Sirs:

In consideration of your paying me/us the above claim amount in full satisfaction of my/our claim in connection with the above mentioned goods (the Goods), I/we acknowledge that you are subrogated to all my/our rights and remedies in and in respect of the goods as provided by the applicable law and practice state in the Contract of Insurance to govern liability for and settlement of claims.  In the case of total loss, you are entitled, at your option, to take over my/our interest in whatever may remain of the goods it being understood that my/our delivery to you of the document of title relating to the goods shall not be construed as an exercise of such option.

I/W also record that you have authority to use my/our name to the extent necessary effectively to exercise all or any of such rights and remedies; that I/we will furnish you with any assistance you may reasonably require of me/us when exercising such rights and remedies on the understanding that you will indemnify me/us against any liability for costs, charges, and expenses arising in connection with any proceedings which you may take in my/our name in the exercise of such rights and remedies.

- DESCRIPTION OF GOODS -

3 CARTONS TVS

RCVD MAR11'08 AM 8:46

CLAIMANT:_   Sharp Electronics Corp _____

SIGNATURE: _C See_____

BY: _Chris Sees_____

DATED: _2/26_   20 08   TITLE: _Manager_____

Our Ref:    NYC07-142761
Sharp Ref:    59327

## SUBROGATION RECEIPT

MITSUI SUMITOMO REF. NO. _____

| ☐VESSEL ROADWAY | POLICY NO. H97-151423 |
|---|---|
| VOYAGE Memphis/Orlando | NAMED ASSURED    Sharp Electronics Corp. |
| B/L (s) NO. 9311631185 | AMOUNT OF LOSS $9255.89 |

## To: MITSUI SUMITOMO INSURANCE CO. LTD.

Dear Sirs:

In consideration of your paying me/us the above claim amount in full satisfaction of my/our claim in connection with the above mentioned goods (the Goods), I/we acknowledge that you are subrogated to all my/our rights and remedies in and in respect of the goods as provided by the applicable law and practice state in the Contract of Insurance to govern liability for and settlement of claims.  In the case of total loss, you are entitled, at your option, to take over my/our interest in whatever may remain of the goods it being understood that my/our delivery to you of the document of title relating to the goods shall not be construed as an exercise of such option.

I/W also record that you have authority to use my/our name to the extent necessary effectively to exercise all or any of such rights and remedies; that I/we will furnish you with any assistance you may reasonably require of me/us when exercising such rights and remedies on the understanding that you will indemnify me/us against any liability for costs, charges, and expenses arising in connection with any proceedings which you may take in my/our name in the exercise of such rights and remedies.

- DESCRIPTION OF GOODS -

24 CARTONS TVS

CLAIMANT:____Sharp Electronics Corp

SIGNATURE:_____

BY:_____

DATED:____10/12____20 07        TITLE: Manager - Claims

```
08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA
```

# EXHIBIT "B"

| 6/27/2007  14:43:46 | **BILL OF LADING** | Page | 1 |
|---|---|---|---|

**SHIP FROM**

SHARP ELECTRONICS CORP.
1300 NAPERVILLE DR

ROMEOVILLE, IL 60446-1043
SID#:0000149863/0000152366  FOB:☐

Bill of Lading Number: **00740000000075191**

(402)  00740000000075191

**CARRIER NAME: Roadway LTL**
Trailer number: **RDWY 252399**
Seal number(s): **0014089**
APLL Load ID:**19756980**
SCAC: **RDWY**
Pro number: **3187573272**

(9012K)  RDWY3187573272

Freight Charge Terms: *(freight charges are prepaid unless marked otherwise)*
Prepaid X  Collect_____  3rd Party_____

☐ (check box) Master Bill of Lading: with attached underlying Bills of Lading

**SHIP TO**

ABC APPLIANCE INC
ONE SILVERDOME IND PK POB 436001

PONTIAC,MI 48343-6001
CID#:00109740  US  FOB:☐

**THIRD PARTY FREIGHT CHARGES BILL TO:**

C/O APL LOGISTICS
1301 RIVERPLACE BLVD.
SUITE 100
JACKSONVILLE,FL 32207
United States of America

**SPECIAL INSTRUCTIONS:Mstr:**00740000000076778
Palletize: Y Call for Appointment: Y Inst: 248-33
5-4222 Fax/Email for Appointment: Y Inst: 248-335
-1632 Use Carrier: Y YELLOW FREIGHT Stop #

**CUSTOMER ORDER INFORMATION**

| CUSTOMER ORDER NUMBER | # PKGS | WEIGHT | PALLET/SLIP (CIRCLE ONE) | | ADDITIONAL SHIPPER INFO |
|---|---|---|---|---|---|
| ds1177 | 10 | 1235.02 | Y | (N) | Requested Delivery Date- 06/22/07 BOX- 0802108601 |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| **GRAND TOTAL** | **10** | **1236** | | | |

**CARRIER INFORMATION**

| HANDLING UNIT | | PACKAGE | | WEIGHT | H.M. (X) | COMMODITY DESCRIPTION *Commodities requiring special or additional care or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. See Section 2(e) of NMFC Item 360.* | LTL ONLY | |
|---|---|---|---|---|---|---|---|---|
| QTY | TYPE | QTY | TYPE | | | | NMFC # | CLASS |
| 2 | Ctn | 10 | Pkgs | 1236.00 | | | | 85.0 |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **2** | | **10** | | **1236** | | **GRAND TOTAL** | | |

Carrier's liability for loss, damage or delay is limited to:
$_____ per lb
$_____ per shipment (truckload)

Shipper_____ By_____

COD Amount: $_____
Fee Terms: Collect: ☐ Prepaid: ☐
Customer check acceptable: ☐

**NOTE** Carrier's liability is for the actual loss unless otherwise agreed in contract, or stated above and signed by Shipper.
RECEIVED, subject to the written transportation contract between shipper and carrier, if applicable, otherwise subject to the terms and conditions of the shipper's standard transportation contract in effect on the date of shipment, which is available to the carrier on request. This shipment is not subject to any classification or tariffs which may be established by the carrier.

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

Shipper Signature

**SHIPPER SIGNATURE / DATE**
This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT.

**Trailer Loaded:**
☐ By Shipper
☐ By Driver

**Freight Counted:**
☐ By Shipper
☐ By Driver/pallets said to contain
☐ By Driver/Pieces

**CARRIER SIGNATURE / PICKUP DATE**
Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent documentation in the vehicle. Property described above is received in good order, except as noted.

RDWY MBate 6-27-07
(SLC)

```
08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA
```

# EXHIBIT "C"



Called Roadway 12/28/07
(800) 552-7013.
Spoke w/ Tracy.
5 ctns short. No FreeAstray
they are still missing

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "D"

Form No.  M2

*60927*

PAGE 1 OF   1

# SHARP

**Sharp Electronics Corporation**
Sharp Plaza PO Box 650 Mahwah, NJ 07430
(201) 529-8200  Telex: 134-327

PLEASE DIRECT ALL CORRESPONDENCE TO:
Sharp Plaza PO BOX 650
Mahwah, NJ 07430
(201) 529-8200 Telex: 134-327

## CREDIT MEMO

**BILL TO: 104885**

GE COMMERCIAL DISTRIBUTION FINANCE
CAPITAL SOLUTIONS
PO BOX 94900
PALATINE IL  60094
USA

**SHIP TO: 109740**

ABC APPLIANCE INC
ONE SILVERDOME IND PK POB 436001
PONTIAC MI  48343-6001
USA

| Document No. 95805633 | Document Date 11/29/2007 | Request No 61599784 | Doc Type-Div ZRE2-60 | Internal Reference 85595910 | Payer 104885 |
|---|---|---|---|---|---|
| Carrier ROADWAY EXPRESS | | Freight Terms FPD | | Customer Reference 95456026 | Order Reason 630 |

| Model | Description/Customer SKU | Unit Pricing | Unit Amt | Quantity | Total |
|---|---|---|---|---|---|
| **COMMENTS:** CREDIT TO CUSTOMER DEBIT TO TRAFFIC TO FILE CLAIM AGAINST CARRIER.   SHORT (5) LC52D92U @ 2848.32ea ON INVOICE 95456026 DATED 7/3/2007 ROADWAY EXPRESS PRO# 3187573272 DEDUCTED FROM PAYMENT CK# 1092295 DEPOSITED 8/6/2007 | | | | | |
| LC52D92U | 52" HDTV AQUOS LC-TV 52" AQUOS LIQUID CRYSTAL TELE-VISION HDTV 16:9 108P 5 WAVE RS232 | Net Price | 2,848.32 | 5 | 14,241.60 |

| Payment Terms Net 30 days | Subtotal 14,241.60 Other Allowances (0.00) | Sales Tax Percentage 0.000 % | Sales Tax Amount 0.00 | Freight 0.00 | Credit Amount 14,241.60 |
|---|---|---|---|---|---|

To assure proper credit please detach and return with remittance.

| PLEASE REMIT PAYMENTS TO: Sharp Electronics Corporation ID- 104885 P.O. Box 10067 PALATINE, IL 60055-0067 | Duns 00-181-8012 | Payment Terms Net 30 days | Credit Memo Date 11/29/2007 | Credit Memo Number 95805633 |
|---|---|---|---|---|
| | Customer No. 104885 | Reference Number ds1177 | | **CREDIT AMOUNT $14,241.60** |

All claims for loss or damage must be filed by you with the carrier. Absolutely no returns will be accepted without prior written authorization. No claims of any kind will be allowed after 10 days from receipt of merchandise.

ORIGINAL

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "E"

| 6/25/2007     18:25:58 | BILL OF LADING | Page | 1 |

**SHIP FROM**

SHARP ELECTRONICS CORP.
1300 NAPERVILLE DR

ROMEOVILLE, IL 60446-1043
SID#:0000137053/0000144942          FOB: ☐

Bill of Lading Number: <u>00740000000066144</u>

(402)   00740000000066144

**SHIP TO**

ABC APPLIANCE INC
ONE SILVERDOME IND PK POB 436001

PONTIAC,MI  48343-6001
CID#:00109740          US          FOB: ☐

CARRIER NAME: **Roadway LTL**
Trailer number: **RDWY 560297**
Seal number(s): **14053**
APLL Load ID:19733100
SCAC: RDWY
Pro number: 3187572457

(9012K)   RDWY3187572457

**THIRD PARTY FREIGHT CHARGES BILL TO:**

C/O APL LOGISTICS
1301 RIVERPLACE BLVD.
SUITE 100
JACKSONVILLE,FL  32207
United States of America
SPECIAL INSTRUCTIONS:Mstr:00740000000068872
Palletize: Y Call for Appointment: Y  Inst: 248-33
5-4222 Fax/Email for Appointment: Y  Inst: 248-335
-1632 Use Carrier: Y YELLOW FREIGHT     Stop #

**Freight Charge Terms:** *(freight charges are prepaid unless marked otherwise)*
Prepaid __X__     Collect _____     3rd Party _____

☐ (check box)     Master Bill of Lading: with attached underlying Bills of Lading

**CUSTOMER ORDER INFORMATION**

| CUSTOMER ORDER NUMBER | # PKGS | WEIGHT | PALLET/SLIP (CIRCLE ONE) | | ADDITIONAL SHIPPER INFO |
|---|---|---|---|---|---|
| ds1177 | 40 | 2486.87 | Y | (N) | Requested Delivery Date- 06/22/07 SON- 0002108601 |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| | | | Y | N | |
| **GRAND TOTAL** | 40 | 2487 | | | |

**CARRIER INFORMATION**

| HANDLING UNIT | | PACKAGE | | | | COMMODITY DESCRIPTION | LTL ONLY | |
|---|---|---|---|---|---|---|---|---|
| QTY | TYPE | QTY | TYPE | WEIGHT | H.M. (X) | Commodities requiring special or additional care or attention in handling or stowing must be so marked and packaged as to ensure safe transportation with ordinary care. See Section 2(e) of NMFC item 360. | NMFC # | CLASS |
| 3 | Ctn | 40 | Pkgs | 2487.00 | | | | 85.0 |
| | | | | | | | | |
| | | | | | | | | |
| 3 | | 40 | | 2487 | | **GRAND TOTAL** | | |

Carrier's liability for loss, damage or delay is limited to:

$_____ per lb
$_____ per shipment (truckload)

Shipper: _____  By: _____

COD Amount: $ _____
Fee Terms:  Collect: ☐   Prepaid: ☐
Customer check acceptable: ☐

**NOTE Carrier's liability is for the actual loss unless otherwise agreed in contract, or stated above and signed by Shipper.**

RECEIVED, subject to the written transportation contract between shipper and carrier, if applicable, otherwise subject to the terms and conditions of the shipper's standard transportation contract in effect on the date of shipment, available to the carrier on request. This shipment is not subject to any classification or tariffs which may be established by the carrier.

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

**Shipper Signature**

SHIPPER SIGNATURE / DATE
This is to certify that the above named materials are properly classified, described, packaged, marked and labeled, and are in proper condition for transportation according to the applicable regulations of the DOT.

Trailer Loaded:
☐ By Shipper
☐ By Driver

Freight Counted:
☐ By Shipper
☐ By Driver/pallets said to contain
☐ By Driver/Pieces

CARRIER SIGNATURE / PICKUP DATE
Carrier acknowledges receipt of packages and required placards. Carrier certifies emergency response information was made available and/or carrier has the DOT emergency response guidebook or equivalent documentation in the vehicle. Property described above is received in good order, except as noted.

*Dave Neil 6-25-07*
*RDWY SLC NITE*

JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "F"

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "G"

Form No.  M2

60924

PAGE 1 OF   1

# SHARP

**Sharp Electronics Corporation**
Sharp Plaza PO Box 650 Mahwah, NJ 07430
(201) 529-8200 Telex: 134-327

PLEASE DIRECT ALL CORRESPONDENCE TO:
Sharp Plaza PO BOX 650
Mahwah, NJ 07430
(201) 529-8200 Telex: 134-327

## CREDIT MEMO

**BILL TO: 104885**

GE COMMERCIAL DISTRIBUTION FINANCE
CAPITAL SOLUTIONS
PO BOX 94900
PALATINE IL  60094
USA

**SHIP TO: 109740**

ABC APPLIANCE INC
ONE SILVERDOME IND PK POB 436001
PONTIAC MI  48343-6001
USA

| Document No. 95805638 | Document Date 11/29/2007 | Request No 61600044 | Doc Type-Div ZRE2-60 | Internal Reference 85592601 | | Payer 104885 |
|---|---|---|---|---|---|---|
| Carrier ROADWAY EXPRESS | | Freight Terms FPD | | Customer Reference 95448097 | | Order Reason 630 |

| Model | Description/Customer SKU | Unit Pricing | Unit Amt | Quantity | Total |
|---|---|---|---|---|---|
| **COMMENTS:** CREDIT TO CUSTOMER DEBIT TO TRAFFIC TO FILE CLAIM AGAINST CARRIER.  SHORT (8) LC37D62U @ 1212.10ea ON INVOICE 95448097 DATED 6/29/2007 ROADWAY EXPRESS  PRO# 3187572457 DEDUCTED FROM PAYMENT ON CK# 1092295 DEPOSITED 8/6/2007 | | | | | |
| LC37D62U LC TV 37" AQUS LIQUID CRYSTAL TELEVISION HDTV 16:9 RESOLUTION 1080P DUAL 1080P HDMI | 37" HDTV AQOUS | Net Price | 1,212.10 | 8 | 9,696.80 |

| Payment Terms Net 30 days | Subtotal 9,696.80 Other Allowances (0.00) | Sales Tax Percentage 0.000 % | Sales Tax Amount 0.00 | Freight 0.00 | Credit Amount 9,696.80 |
|---|---|---|---|---|---|

To assure proper credit please detach and return with remittance.

| PLEASE REMIT PAYMENTS TO: Sharp Electronics Corporation ID- 104885 P.O. Box 10067 PALATINE, IL 60055-0067 | Duns 00-181-8012 | Payment Terms Net 30 days | Credit Memo Date 11/29/2007 | Credit Memo Number 95805638 |
|---|---|---|---|---|
| | Customer No. 104885 | Reference Number ds1177 | | CREDIT AMOUNT $9,696.80 |

All claims for loss or damage must be filed by you with the carrier. Absolutely no returns will be accepted without prior written authorization. No claims of any kind will be allowed after 10 days from receipt of merchandise.

ORIGINAL

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "H"

01S DELIVER ON: 112706 DOCK#:

**STRAIGHT BILL OF LADING - SHORT FORM**

Original-Not Negotiable

RECEIVED, subject to the classification and lawfully filed tariffs in effect on the date of the issue of this Bill of Lading.

FROM:

# SHARP ELECTRONICS CORP.

5555 E. RAINES RD. MEMPHIS, TN 38115

CONSIGNED TO DESTINATION:

AVAD FLORIDA
JUST IN TIME DISTRIBUTORS
6728 EDGEWATER COMMERCE P
ORLANDO FL 32810

| CUSTOMER ORDER NO. | DEPT. | DATE |
|---|---|---|
| 0096654 | | 11/16/06 |

B/L NUMBER: 308264

| CONT NO. | NUMBER CARTONS | FRT CODE SEE BACK | MODEL NUMBER | QUANTITY | SHIPPED | INV | WEIGHT (LBS) | WEIGHT (KG) | DESCRIPTION |
|---|---|---|---|---|---|---|---|---|---|
| 10 | 20 | A01 * | LC20S5U | 20 | 20 A | | 432 | 196 | 20" AQUOS LC-TV 20A1U |
| 20 | 4 | A01 * | LC32D5OU | 4 | 4 A | | 229 | 104 | 32" HDTV AQUOS 4A01 |

<<<< ATTN/PHONE >>>>
<<<< ATTN: TEL:407 447-8991 FAX: 407 292-2577 >>>>
<<<< SPECIAL INSTRUCTIONS >>>>
EXTRA PACKING LIST

Number of Skids
2 Skids

INV: A-FIRST CLASS
SHIPPER PER
NO. 100

B-FACTORY SERVICED AGENT DATE

LOAD ID: 17271150

<< SERIAL NO REQUIRED >>

SPECIAL SHIPPING NOTES 308264

BAT-1116 5 PAGE 1 (LAST)

*** SOLD TO ***
AVAD FLORIDA
217114

REMIT C.O.D. TO:
SHARP ELECTRONICS CORPORATION

| FRT CODE | CARTONS | WEIGHT (LBS) | WEIGHT (KG) | CU. FT. |
|---|---|---|---|---|
| A01 | 24 | 661 | 300 | 98 |

COD
AMT.$

C.O.D. FEE
COLLECT $

BILL NUMBER
308264

CARRIER
RDWY-L
ROADWAY EXPR
9311631185
S.C.N. NUMBER
0019A8968
MASTER BL

FREIGHT CHARGE

EQUALIZE FROM

SHIP FROM
MP

SHIP-TO A/C NO.
217114

B/L ISSUE DATE
11/17/06

DESTINATION
MP

ENT'T: 0- MP
ORD : P

Prepaid

SHARP ELECTRONICS CORP.
C/O APL Logistics
1301 Riverplace Blvd, Suite 1100
Jacksonville, FL 32207

SHARP ELECTRONICS CORP.
PERMANENT POST OFFICE ADDRESS OF SHIPPER
SHARP PLAZA
MAHWAH, NEW JERSEY 07430

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "I"

931-163118-5    ***

| 1-17-06 | 716-1 | /12 | 8460B. 4 | PAGE 01 OF 03 |

**0076654**

SHARP ELECTRONICS CORP  2551
5555 E RAINES RD
MEMPHIS TN 38115

AVAD FLORIDA
6728 EDGEWATER COMMERCE PKWY
ORLANDO FL 32810

ROADWAY'S TARIFFS LIMIT ITS LIABILITY.
ALL FREIGHT RECEIVED IN GOOD ORDER AND
SHRINKWRAP/BANDING INTACT UNLESS NOTED
BELOW. THANK YOU! ROADWAY EXPRESS, INC
*Short 1 skd containing 11 32"&4. 32"*
PLEASE SIGN HERE

x *Danny Mattos  11-27-06*

SEE FINAL PAGE.

308264

**RO 931-163118-5**

**1 SKID CONTAINING 9 PCS**
SEE FINAL PAGE.

SEE
FINAL PAGE

| QL.HU | PKG | HM | DESCRIPTION OF ARTICLES | CODE | WEIGHT (LB) | RATE | CHARGES |
|---|---|---|---|---|---|---|---|
| 2 | SKD | | IF FULL TRAILERS REQUIRED AT DELY CALL JEFF KATZ 201-5 29-8470 CONTAINING 32" HDTV AQUOS | E85 | 229 | | |
| | | | NMFC=06303500 CLC125 | | | | |
| | | | 4 CTN 20" AQUOS LC-TV | E85 | 432 | | |
| | | | NMFC=06303500 CLC125 | | | | |
| | | | 20 CTN | | | | |

DELIVERY RECEIPT

*called
Roadway  8/24/07
(800) 515-0420
File a claim*

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "J"

Form No. 'M2

S9327

PAGE 1 OF 2

# SHARP

**Sharp Electronics Corporation**
Sharp Plaza PO Box 650 Mahwah, NJ 07430
(201) 529-8200  Telex: 134-327

**PLEASE DIRECT ALL CORRESPONDENCE TO:**
Sharp Plaza PO BOX 650
Mahwah, NJ 07430
(201) 529-8200 Telex: 134-327

## CREDIT MEMO

**BILL TO: 217114**

AVAD FLORIDA
JUST IN TIME DISTRIBUTORS, INC.
6728 EDGEWATER COMMERCE PARKWAY
ORLANDO FL 32810
USA

**SHIP TO: 217114**

AVAD FLORIDA
JUST IN TIME DISTRIBUTORS, INC.
6728 EDGEWATER COMMERCE PARKWAY
ORLANDO FL 32810
USA

| Document No. | Document Date | Request No | Doc Type-Div | Internal Reference | Payer |
|---|---|---|---|---|---|
| 95539567 | 08/13/2007 | 61557977 | ZRE2-60 | 85308264 | 217114 |
| Carrier | | Freight Terms | | Customer Reference | Order Reason |
| DEFAULT CARRIER | | FPD | | 95040165 | 630 |

| Model | Description/Customer SKU | Unit Pricing | Unit Amt | Quantity | Total |
|---|---|---|---|---|---|
| **COMMENTS:** CREDIT TO CUSTOMER DEBIT TO TRAFFIC TO FILE CLAIM AGAINST CARRIER. SHORT (11) LC20S5U 20" AQUOS LC-TV @ $478.23 EACH AND (4) LC32D50U 32" HDTV AQUOS @ $998.85 EACH ON INVOICE# 95040165 DATED 11/17/06. ROADWAY EXPRESS PRO# 9311631185 DEDUCTED FROM PAYMENT ON CK# 14723 DEPOSITED 01/11/07. | | | | | |
| LC20S5U 20" AQUOS LC-TV, BOTTOM SPEAKERS, VGA, 480P EDTV MONITOR | 20" AQUOS LC-TV | Net Price | 0.00 | 11 | 0.00 |
| LC32D50U | 32" HDTV AQUOS | Net Price | 0.00 | 4 | 0.00 |

| Payment Terms | Subtotal | Sales Tax Percentage | Sales Tax Amount | Freight | Credit Amount |
|---|---|---|---|---|---|
| | | | | | CONTINUED |

To assure proper credit please detach and return with remittance.

| PLEASE REMIT PAYMENTS TO: Sharp Electronics Corporation ID- 217114 P.O. Box 40214 ATLANTA, GA 31192-0214 | Duns 00-181-8012 | Payment Terms Net 30 days | Credit Memo Date 08/13/2007 | Credit Memo Number 95539567 |
|---|---|---|---|---|
| | Customer No. 217114 | Reference Number 0096654 | | **CREDIT AMOUNT $9,255.89** |

All claims for loss or damage must be filed by you with the carrier. Absolutely no returns will be accepted without prior written authorization. No claims of any kind will be allowed after 10 days from receipt of merchandise.

ORIGINAL

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "K"

# SHARP ELECTRONICS CORPORATION

Page: 1 of 1

Sharp Plaza
Traffic Claims Department Box 11B
Mahwah, N.J. 07430

## Presentation of Loss and Damaged Claim

| | |
|---|---|
| ROADWAY EXPRESS<br>P.O. BOX 3577<br>AKRON OH 44309<br>Attn: Claims Department | Our Claim Number : 0000060927<br>Carrier Claim # :<br>Claim Amount : 14,241.60<br>Date of Claim : 11/30/2007 |

Shipper                                  : SHARP ELECTRONICS CORPORATION
Point of Origin                          : 1300 NAPERVILLE DRIVE
                                           Romeoville, IL 60446-1091
Date of Shipment                         : 4/27/07
Total Number of Cartons                                              : 00001
Total Weight                             : 1,235.000
Sub B/L                                  :
Bill of Lading                           : 85595910
Carrier PRO Number                       : 3187573272
Consignee                                : ABC APPLIANCE INC
Point of Destination                     :
                                           ONE SILVERDOME IND PK POB 436001
                                           PONTIAC, MI 48343-6001

## Detailed Statement Showing How Amount of Claim is Determined

Short:
  5 LC52D92U at    2848.32 each.
Claim# 0000060927
Invoice#: 0095456026 dated 07/03/2007
Sub B/L:
B/L#: 0085595910
Carrier: ROADWAY EXPRESS
PRO#: 3187573272

In consideration of the payment of the foregoing claim to us, we hereby agree to refund to the payer there of such duplicate payment, if any, of this claim resulting from our being unable to produce the original freight bill or bill of lading, it being understood that our liability hereunder, in any event, shall not exceed the amount received by us in payment of this claim. The foregoing statement of facts is hereby certified as correct.

Signature of Claimant :

Title : Claims & Adjustments Analyst
Phone :
Fax : (201) 529-9123

PLEASE NOTE: ALL CHECKS, LETTERS AND ACKNOWLEDGEMENTS SHOULD BE FORWARDED TO THE CLAIMS DEPARTMENT - INTEROFFICE BOX # 11B. THANK YOU

08CV4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "L"

# SHARP ELECTRONICS CORPORATION

Page: 1 of 1

Sharp Plaza
Traffic Claims Department Box 11B
Mahwah, N.J. 07430

## Presentation of Loss and Damaged Claim

| | |
|---|---|
| ROADWAY EXPRESS<br>P.O. BOX 3577<br>AKRON OH 44309<br>Attn: Claims Department | Our Claim Number : 0000060928<br>Carrier Claim # :<br>Claim Amount : 9,696.80<br>Date of Claim : 11/30/2007 |

Shipper                          : SHARP ELECTRONICS CORPORATION
Point of Origin                  : 1300 NAPERVILLE DRIVE
                                   Romeoville, IL 60446-1091

Date of Shipment                 : 6/25/07
Total Number of Cartons                                          : 00001
Total Weight                     : 2,486.840
Sub B/L                          :
Bill of Lading                   : 85592601
Carrier PRO Number               : 3187572457
Consignee                        : ABC APPLIANCE INC
Point of Destination             :

                                   ONE SILVERDOME IND PK POB 436001
                                   PONTIAC, MI 48343-6001

## Detailed Statement Showing How Amount of Claim is Determined

Short:
    8 LC37D62U at    1212.10 each.
Claim#.0000060928
Invoice#: 0095448097 dated 06/29/2007
Sub B/L:
B/L#: 0085592601
Carrier: ROADWAY EXPRESS
PRO#: 3187572457

In consideration of the payment of the foregoing claim to us, we hereby agree to refund to the payer there of such duplicate payment, if any, of this claim resulting from our being unable to produce the original freight bill or bill of lading, it being understood that our liability hereunder, in any event, shall not exceed the amount received by us in payment of this claim. The foregoing statement of facts is hereby certified as correct.

Signature of Claimant  :

Title : Claims & Adjustments Analyst
Phone :
Fax : (201) 529-9123

PLEASE NOTE: ALL CHECKS, LETTERS AND ACKNOWLEDGEMENTS SHOULD BE FORWARDED TO THE CLAIMS DEPARTMENT - INTEROFFICE BOX # 11B. THANK YOU

08cv4968
JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "M"

# SHARP ELECTRONICS CORPORATION

Page: 1 of 1

Sharp Plaza
Traffic Claims Department Box 11B
Mahwah, N.J. 07430

## Presentation of Loss and Damaged Claim

| | |
|---|---|
| ROADWAY EXPRESS<br><br>NEWARK NJ 07188<br>Attn: Claims Department | *AKRON OH.* | Our Claim Number : 0000059327<br>Carrier Claim # :<br>Claim Amount : 9,255.89<br>Date of Claim : 08/13/2007 |

Shipper                          : SHARP ELECTRONICS CORPORATION
Point of Origin                  : 3860 EAST HOLMES ROAD
                                   Memphis, TN 38118
Date of Shipment                 : 11/17/2006
Total Number of Cartons                                          : 00024
Total Weight                     : 661.000
Sub B/L                          :
Bill of Lading                   : 85308264
Carrier PRO Number               : 9311631185
Consignee                        : AVAD FLORIDA
Point of Destination             : JUST IN TIME DISTRIBUTORS, INC.
                                   6728 EDGEWATER COMMERCE PARKWAY
                                   ORLANDO, FL 32810

## Detailed Statement Showing How Amount of Claim is Determined

SHORT:
    11 LC20S5U at    478.23 each.
    4 LC32D50U at    998.84 each.
Claim# 0000059327
INVOICE#: 0H95040165 DATED 00/00/0000
SUB B/L:
B/L#: 0085308264
CARRIER: ROADWAY EXPRESS
PRO#: 9311631185

In consideration of the payment of the foregoing claim to us, we hereby agree to refund to the payer there of such duplicate payment, if any, of this claim resulting from our being unable to produce the original freight bill or bill of lading, it being understood that our liability hereunder, in any event, shall not exceed the amount received by us in payment of this claim. The foregoing statement of facts is hereby certified as correct.

Signature of Claimant :    *C Sole*

Title : Claims & Adjustments Analyst
Phone :
Fax : (201) 529-9123

RCVD AUG16'07 PM 3:25

PLEASE NOTE: ALL CHECKS, LETTERS AND ACKNOWLEDGEMENTS SHOULD BE FORWARDED TO THE
CLAIMS DEPARTMENT - INTEROFFICE BOX # 11B. THANK YOU

JUDGE KENDALL
MAGISTRATE JUDGE KEYS
EDA

# EXHIBIT "N"

*Rec'd 3/3/06*        *Saved —    Roadway Transportation Agreement*

# TRANSPORTATION AGREEMENT

AGREEMENT made and entered into as of the 1st day of May, 2003, by and between **ROADWAY EXPRESS, INC.** (hereinafter called "CARRIER") and **SHARP ELECTRONICS CORPORATION** and all Divisions and Subsidiaries, having corporate offices at Mahwah, New Jersey or elsewhere (hereinafter called 'SHIPPER").

### WITNESSETH:

WHEREAS, CARRIER, as an independent contractor, desires to furnish motor carrier service to SHIPPER for the transportation of general commodities and represents that it is a duly authorized contract carrier in interstate commerce under one or more permits issued by the Interstate Commerce Commission, copy (copies) of which are annexed hereto as "Appendix C". CARRIER further represents and warrants that the copy of the permit(s) attached hereto, is a true, correct and complete copy of the permit(s) as in full force and effect as of the date of the Agreement.  The CARRIER shall notify SHIPPER immediately in the event of any suspension, cancellation, withdrawal, notification or transfer of the permit(s); any of which shall give SHIPPER the right to terminate this Agreement immediately upon written notice to CARRIER; and

WHEREAS, SHIPPER has special and distinct needs for transportation services and desires to avail itself of such motor contract carrier services;

Now, THEREFORE, in consideration of the premises and the mutual agreements herein contained, the parties hereto agree as follows:

## 1. SHIPPER'S OBLIGATION

a.  SHIPPER agrees to tender to CARRIER at locations throughout the United States, as a contract carrier, and CARRIER agrees to accept from SHIPPER, a series of shipments.

b.  SHIPPER agrees to pay to CARRIER the rates and charges set forth in "Appendix A and B", as amended hereto, as full and complete compensation for the services to be provided hereunder.  Said rates and charges will apply to all goods on Outbound Prepaid. Inbound Collect, and Third Party Inbound/Collect shipments.  The rates and charges as agreed herein will apply on Interstate and Intrastate and all collect shipments where Sharp is the receiver.  All rates/discounts apply to both prepaid and collect shipments where Sharp is responsible for freight payment.  Rates/discounts apply on all interline points.

c.  Rates may be established or amended verbally in order to meet SHIPPER's changing shipping schedules and needs.  CARRIER shall immediately confirm each such rate by a signed facsimile transmission or letter to SHIPPER (at Corporate Headquarters in Mahwah, NJ) and said documents shall be annexed to this Agreement as an Addendum to Appendices.  SHIPPER shall sign and return a copy of said confirmation to CARRIER.

d.  Shipments tendered to CARRIER pursuant to this Agreement shall be subject to the rates, rules and regulations herein or annexed hereto as "Appendix A or B".  This Agreement will not be subject to any other rates, rules, charges or published tariffs unless agreed to herein or unless mutually agreed to by both parties in writing and attached hereto as an Addendum to the Agreement.

Page 1

e. Mileage, where required, will be determined through the use of the then effective Household Goods Carriers' Bureau, Inc. Mileage Guide 100 series. Rate applications governed by zip code application will be determined by Household Goods Carriers' Bureau Inc. National 3 Digit Zip Code Mileage Guide No 1 ICC HGB 105 as determined in Appendix A or other Appendices or schedules hereto.

## 2. CARRIER'S OBLIGATIONS

a. CARRIER agrees to meet the SHIPPER's distinct needs and or special requirements and to provide a specialized and tailored service to meet SHIPPER's competitive requirements. CARRIER agrees to provide dedicated equipment and drivers for SHIPPER's exclusive use, multiple pick ups and deliveries, scheduled shipping and receiving appointments, specific service routes, spotting of equipment and in transit storage services as may be required on specific orders and as may be outlined in Appendix A.

b. CARRIER shall promptly and efficiently receive, transport and deliver safely and with reasonable dispatch and without delay; the goods entrusted to it hereunder, whether received from SHIPPER or from Third Parties at the request of the SHIPPER. CARRIER agrees to expedite shipments when so requested by SHIPPER and deliver them in like good order and condition to the consignee listed in the contracts of carriage.

c. CARRIER shall obtain receipts for all merchandise delivered including order notify/sight draft shipments. CARRIER shall prepare and issue weight certificates and all such documentation as may be required in the Appendices hereto, or by Federal, State or local laws, rules or regulations governing the services to be performed hereunder. At the request of SHIPPER, CARRIER agrees to provide copes of same to SHIPPER in sufficient detail to substantiate billing for the services provided. CARRIER shall retain such records for five years after delivery of the involved shipments or for such greater period of time as may be required by Federal, State laws, rules or regulations.

d. CARRIER agrees not to use "Substituted Services" , or brokers for SHIPPER's goods without prior written agreement of SHIPPER.

## 3. CARRIER'S EQUIPMENT AND DRIVERS

a. CARRIER agrees to operate at its cost and expense its motor vehicle equipment in a legal and lawful manner and further agrees to maintain the equipment in good, safe and lawful operating condition at all times. SHIPPER shall have the right to terminate this Agreement if CARRIER's equipment is not maintained and operated within the limits of the law.

b. CARRIER shall, at its cost and expense, employ in the operation of such vehicles and equipment fully qualified personnel, shall procure and maintain such licenses and permits as required by Federal, State or local authorities with respect to such transportation services and shall comply with the laws and regulations applicable hereto.

c. CARRIER shall bear the costs and expenses of the furnishing of all fuel, oil, tires and other parts, supplies and equipment necessary or required for the safe operation and maintenance of the equipment, except as otherwise provided herein. CARRIER shall bear all expenses, including the expense of road service and repair, in connection with the use and operation of the equipment and shall bear the cost and expense of maintaining the equipment in good repair and mechanical condition, except as otherwise provided herein. SHIPPER shall not be liable to CARRIER for any damages sustained by or to CARRIER's equipment or for loss by confiscation or seizure of CARRIER's equipment by any public authority.

d. CARRIER shall have sole and exclusive control over the manner in which CARRIER and its agents perform the transportation services provided for hereunder, and CARRIER shall utilize such individuals as it may deem necessary in connection therewith, it being understood and agreed that such individuals shall be subject to discharge, discipline and control solely and exclusively by CARRIER.

e. CARRIER shall not display the name of SHIPPER upon CARRIER's vehicles without the expressed written consent of SHIPPER.

f. CARRIER's equipment offered to SHIPPER for loading of the commodities to be transported is to be clean, odor free, dry, leak proof and free of all contamination and infestation. Said equipment shall be subject to inspection for suitability and cleanliness by SHIPPER. SHIPPER may reject unsuitable equipment at any time with no liability or obligation on the part of SHIPPER.

g. CARRIER will comply with all regulations set forth by SHIPPER while upon SHIPPER's premises, including but not limited to, restrictions on smoking and prohibitions on the use, possession or sale of drugs or alcohol. Further, CARRIER will avoid interfering with normal operations of SHIPPER. CARRIER assumes all risk of harm to its property while on SHIPPER's premises, including but not limited to, theft, damage or disappearance, unless such loss or damage is due in whole or in part to any negligence of SHIPPER.

## 4. TERMS OF PAYMENT

a. CARRIER shall invoice SHIPPER promptly following delivery of freight. Invoice must be issued within sixty (60) days of shipment. Payment of each invoice shall be made by SHIPPER within thirty (30) days of delivery with a valid, uncontested freight bill. All Freight bills, accompanied by a copy of the bill of lading (#2 Green Copy on Prepaid) should be submitted to:

SHARP ELECTRONICS CORP. (Acct # 100)
C/O CASS INFORMTION SYSTEMS
900 CHELMSFORD STREET
LOWELL, MA. 01851-8101

CARRIER agrees that no penalties or interest will be assessed to SHIPPER for past due accounts (including loss of discount). SHIPPER equally agrees that no penalties or interest will be assessed for overcharges or freight payment errors.

b. Any action at law by CARRIER to recover undercharges hereunder, or by SHIPPER to recover overcharges hereunder, shall be commenced not more than one hundred eighty (180) days from the date of the original invoice. To the extent permitted by applicable law, the expiration of the one hundred eighty (180) days period shall be a complete and absolute defense to any action, regardless of any mitigation or extenuating circumstances, unless the Party named

Page 3

as a defendant in such action has expressly agreed in writing to waive such defense. The provisions of this section shall survive the cancellation, terminatiion or expiration of this Agreement.

c. CARRIER shall have no lien for the retention of freight to secure payment of freight charges. Such lien will not apply on refused and unclaimed shipments. CARRIER will follow the NMFC domestic bill of lading provisions in conjunction with Article 7 of this agreement regarding salvage on such refused and unclaimed freight.

d. SHIPPER reserves the right to refuse payment on any invoice not originally submitted within sixty (60) days of shipment.

## 5. INDEMNITY

CARRIER agrees to indemnify and hold SHIPPER harmless against any and all claims for loss, liability or damage (excluding cargo loss, damage or delay) brought by a third party due to CARRIERS negligent performance of work under this agreement.
Such indemnity will not apply to the extent that any claim is the result , either in whole or part, of any negligent or intentional act or omission on the part of SHIPPER, it's employees , or its agents.

## 6. FORM OF RECEIPT

a. Each incident of transportation of property under this Agreement shall be evidenced by a written receipt in a form agreed to by the parties, signed by CARRIER and SHIPPER showing the kind, quantity and condition of commodities received and delivered by CARRIER at the loading and unloading points respectively.  It is agreed by the parties hereto that since it is convenient for SHIPPER to use the Uniform Bill of Lading on shipments transported under this Agreement, said Bill of Lading Receipt is a convenience document and any and all terms and conditions appearing on the reverse side of SHIPPER bill of lading or any other document of receipt are NULL and VOID and shall not be applicable whatsoever, to any shipment transported by CARRIER for SHIPPER.  The terms of this Agreement, including those contained in the Appendices, shall govern all terms, conditions, rules and regulations for SHIPPER, CARRIER and all third parties involved in the contract of transportation.

CARRIER's duties and responsibilities under this Agreement shall commence when CARRIER takes possession and control of SHIPPER's property or upon execution of the receipt by CARRIER.  With respect to shipments loaded on CARRIER's equipment, possession shall be deemed to have been transferred from SHIPPER to CARRIER when SHIPPER completes the loading of CARRIER vehicles.

## 7. LIABILITY FOR LOSS, DAMAGE OR DELAY TO SHIPMENTS

a. Carrier agrees that, in the transportation of all goods hereunder, it will assume and does assume, the liability of an interstate common motor carrier, as provided in 49 USC 11707, such liability to exist from the time of receipt of any said goods by CARRIER until proper delivery has been made.

b.  CARRIER's liability shall be for the released value of $25 per pound for the goods lost or damaged in transit with a maximum of $100,000 per shipment, whether or not lost or damaged enroute to a purchaser. Any limitation of liability must be agreed to in writing by SHIPPER and CARRIER and included as an Appendix or Addendum hereto.  CARRIER further agrees that no merchandise, damaged or otherwise, may be disposed of on the salvage market without the expressed written consent of SHIPPER.

c.  If a shipment is refused by the consignee, or CARRIER is unable to deliver it for any reason, CARRIER liability will be that of a contract carrier and not as a warehouseman, CARRIER further agrees that there will be no storage charges or other fees for the first three (3) days storage after the On Hand Notice is issued.

d.  CARRIER agrees to issue an On Hand Notice for any goods held after three (3) days from shipping date, with a specific notification for all goods subject to C.O.D. or Order Notify/Sight Draft charges or any other shipment subject to advance payment by consignee.

e.  If subsequent to the issuance of an On Hand Notice, freight is returned to SHIPPER, SHIPPER agrees to pay all reconsignment and storage charges as outlined in Appendices hereto.  If delivery is made to the original consignee, all storage and reconsignment charges are payable by consignee and SHIPPER will not be responsible for those charges.

f.  CARRIER shall notify SHIPPER immediately by telephone, facsimile or other telecommunication of any accident, theft, hijacking, delay, damage or shortage which impair the safe and prompt delivery of the goods in its control.  CARRIER shall immediately notify SHIPPER by telephone, facsimile or other telecommunication of any refused, damaged or On Hand freight and request additional instructions regarding delivery, storage or disposition of the available goods.

g.  CARRIER acknowledges that SHIPPER may utilize other carriers to facilitate the movement of any such delayed shipment.  In the event CARRIER fails to complete any trip undertaken by it, and SHIPPER or any other person which SHIPPER contracts, completes such trip, CARRIER shall be responsible for reasonable and necessary costs, charges, fees and expenses related thereto.

h.  CARRIER shall return all damaged shipments at its expense to the point of origin or to other points as instructed by SHIPPER.  CARRIER is specifically prohibited from disposing of any damaged goods without the expressed written consent of SHIPPER.

i.  All claims for loss or damage must be filed in writing with CARRIER within nine (9) months of shipping date.  CARRIER must acknowledge in writing, receipt of all claims within thirty (30) days of filing.  All claims so filed, must be settled by CARRIER within ninety (90) days of receipt

j.  The time limit within which SHIPPER must institute suit against CARRIER to recover on a cargo claim shall be two (2) years and a day from date of shipment.

k.  If either party is successful in recovering on a cargo claim in a court of law or arbitration proceeding, Prevailing party shall be entitled to recover all of its costs incurred in collecting its claim, including reasonable attorney's fees and interest from the date of delivery or scheduled delivery of the shipment.

L. CARRIER shall be liable for physical damage to SHIPPER's property caused during loading by CARRIER's driver notwithstanding the signing of a clear delivery receipt by consignee prior to unloading.

## 8. INSURANCE

a. At all times during the term of this Agreement, CARRIER shall carry insurance in the amounts set forth below or the minimum required by the Interstate Commerce Commission, or any Federal, State or local authority, whichever is greater:

| Coverage | Amounts |
|---|---|
| Worker's Compensation | Statutory |
| Employer's Liability | $1,000,000 |
| Public Liability | $1,000,000/$1,000,000 |
| Property Damage | $1,000,000 |
| Automobile Public Liability | $1,000,000/$1,000,000 |
| Automobile Property Damage | $1,000,000 |
| Cargo Insurance | $500,000 |

If required by SHIPPER, CARRIER shall increase the limits of its coverage. Prior to accepting any shipments from SHIPPER, CARRIER shall provide SHIPPER with an Insurance Certificate evidencing such insurance and coverage. Such Certificate must include any deductibles named in the policy.

b. CARRIER's cargo insurance policies shall not exclude coverage for infidelity, fraud, dishonesty or criminal acts of CARRIER's employees, agents, officers or directors. In the event said policy contains such exclusions, CARRIER shall obtain and furnish a Surety Bond providing such coverage to the satisfaction of SHIPPER.

c. SHIPPER shall be named as an "Additional Assured" on the bodily Injury and Property Damage Policies, and "Loss Payee" on the cargo liability policy. The policy or policies evidencing such insurance shall contain a clause that the insurer will not cancel or change coverage of the insurance without first giving SHIPPER thirty (30) days prior written notice, and that the Insurer will be liable to SHIPPER for any all damages resulting from Insurer's failure to give such notice.

## 9. INDEPENDENT CONTRACTOR

CARRIER shall perform the services hereunder as an independent contractor and shall have exclusive control and direction of the persons operating the equipment or otherwise engaged in such transportation services. CARRIER assumes full responsibility for the acts and omissions of such persons and, when applicable, shall have exclusive liability for the payment of local state and federal payroll taxes or contributions or taxes for unemployment insurance, worker's compensation, old age pensions or other social security and related protection with respect to the persons engaged in the performance of transportation services and agrees to comply with all applicable rules and regulations pertaining thereto. CARRIER, in the performance of its duties and responsibilities under this Agreement, shall employ in the operation of the equipment only competent, able and legally licensed personnel, with the costs and expense to CARRIER. If under the applicable State Unemployment Compensation Law, CARRIER has the right to elect whether or not to come under and be bound by the terms of such law, CARRIER shall either self insure or promptly register under said law.

## 10. SCOPE OF SERVICE

It is understood and agreed between the parties hereto that this is a non-exclusive Agreement and that CARRIER shall be free to accept freight for transportation from shippers other than named SHIPPER and that SHIPPER shall be free to tender freight for transportation to carriers other than the named CARRIER.

## 11. NON ALTERATION CLAUSE

Except as otherwise provided herein, the rules, regulations, rates and charges in the Agreement will apply to the exclusion of all other rates, rules, regulations and/or charges published for the account of named CARRIER.

## 12. VENDORS' PARTICIPATION

It is SHIPPER's intent to provide through this Agreement, a contractual relationship with CARRIER for SHIPPER's vendors and suppliers on shipments transported into SHIPPER's facilities paid by SHIPPER. All such transportation will be on shipments billed to SHIPPER and paid by SHIPPER.

## 13. TERM OF AGREEMENT

The term of this Agreement shall be for a period of one (1) year commencing with the date shown on page one (1) and shall automatically renew for additional one (1) year period unless written notice of non-renewal is given by either party at least thirty (30) days prior to the end of the term. All rates and charges in this Agreement are fixed for a period of one (1) year from the effective date of those rates and charges.

## 14. TERMINATION

This Agreement may be terminated by either party upon thirty (30) days written notice, provided that in the event either party violates any material provisions of this Agreement, the other party shall have the right to immediately terminate the same. The notice of termination shall be delivered personally or sent via registered or certified mail, return receipt requested.

SHIPPER may terminate Agreement without notice and without further obligation or liability under Section 1, for the following:

1. If petition for bankruptcy is filed against or by CARRIER or CARRIER becomes insolvent or makes a general assignment for the benefit of creditors.

2. If all or any portion of the CARRIER's operating authority is revoked, canceled, suspended or discontinued by operation of law or otherwise, or CARRIER's insurance policy is canceled or otherwise invalidated.

3. CARRIER hereby specifically agrees to notify SHIPPER immediately in the event of revocation or insolvency as outlined in Paragraph 14(1) or (2) above.

## 15. NON ASSIGNABILITY

The rights and obligations of this Agreement hereunder are personal to CARRIER and SHIPPER and this Agreement shall not be assignable or otherwise transferable by either party, in whole or in part, without the written consent of the other party.

## 16. CONFIDENTIALITY

As part of the business relationship between CARRIER and SHIPPER, CARRIER may be in or come into possession of Information or data which constitutes trade secrets, know-how, confidential Information or otherwise considered secrets by SHIPPER (hereinafter 'Information'). In consideration of the receipt of such Information and potential business, CARRIER agrees to maintain such Information in the utmost confidence, to use such solely in connection with such business relationship and to take all measures necessary to protect such Information. The details of this Agreement shall be limited to CARRIER and SHIPPER employees, agents and only those necessary to perform services for either party.

## 17. FORCE MAJEURE

Neither SHIPPER or CARRIER shall be liable for damages for any delay or failure to perform any of the terms and conditions of this Agreement arising from causes beyond its control, including but not limited to acts of God or public enemies, acts of civil or military authority, labor disputes, fires, riots, wars or conditions of war, embargoes, accidents, epidemics, floods or other unusually severe weather, closing or obstruction of highways, bridges or ferries, r shortage of raw materials or power, any of which have a material, substantial or adverse effect on either party's ability to perform pursuant to the terms of this Agreement. In the event of such delay or failure, the minimum tonnage provided herein shall be reduced by the proportion such period of delay or failure bears to one year. In the event of a labor dispute at SHIPPER's facilities, CARRIER agrees to provide equipment and normal transportation services.

## 18. SEPARABILITY

In the event that any phrase, clause, sentence, or other provision contained in this Agreement shall violate any applicable statute, ordinance, rule or law, such phrase, clause, sentence or provision shall be ineffective to the extent of such violations without invalidating any other such provisions of this Agreement.

## 19. NOTICES

Notices hereunder shall be given by U.S. mail, postage prepaid, to the parties at the following addressees:

CARRIER                                        SHIPPER

| CARRIER | SHIPPER |
|---|---|
| Christina F. Lauria,VP Pricing Admin. | Robert E. Stickman – VP Logistics |
| Roadway Express Inc | Sharp Electronics Corporation |
| 1077 Gorge Boulevard | Sharp Plaza |
| Akron, OH  44309 | Mahwah, New Jersey 07430 |

## 20  ENTIRE UNDERSTANDING

This Agreement and the attached Appendices represent the entire understanding of the parties and cannot be amended except in writing signed by both parties.  All prior discussions, understandings, negotiations and Agreements are merged herein.  All prior oral or written agreements between the parties are hereby canceled, except as provided herein.

Environmental Impact - This Agreement will not result in an adverse effect on the quality of the human environment.

The provisions of this Agreement shall survive cancellation, termination or expiration of this Agreement.

This Agreement shall be governed by the laws of the State of New Jersey.


IN WITNESS THEREOF, the parties have caused their signatures to be executed by their duly authorized representatives as of the day above written.


ROADWAY  EXPRESS, INC                    SHARP ELECTRONICS CORPORATION


By: _____ bjt        By: _____

Title: Vice-President, Pricing Administration    Title: _Director Nat Dist Ops_

Date: _____04/16/03_____                Date: ____4-23-03_____

File 201-2999    Contract 84608


Page  9

# ADDENDUM A

1.  Minimum charges will be subject to a rate as identified in the pricing in Appendix A

2.  On LTL shipments which are tendered by Sharp to the carrier for which delivery appointments are required, and the carrier is unable to secure such a delivery appointment within 10 days an "On-Hand Notice" is to be sent to Sharp.  If within 5 days after the date of issuance of the On-Hand Notice delivery cannot be made and Sharp authorizes the carrier to return the merchandise to Sharp then the following storage charges are to apply:

3.  C.O.D. Fees of $25 will apply on any C.O.D. shipments tendered to the carrier by Sharp.

4.  All rates apply to both prepaid and collect shipments.

5 .Carrier agrees to notify Sharp immediately upon discovery of any loss due to theft, hijacking, etc.

6  Carrier agrees to issue On Hand Notice for any shipments refused by consignee within three (3) days.

7  Acknowledgment of Claims: Each carrier will, upon receipt in writing of a proper claim in the manner and form described in these regulations, acknowledge the receipt of such claim in writing to the claimant within 30 days after the date of its receipt by the Carrier unless the Carrier will have paid or declined such claim in writing within 30 days of the receipt thereof.  The Carrier will indicate in its acknowledgment to the claimant what, if any, additional documentary evidence or other pertinent information may be required by it further to process the claim as its preliminary examination of the claim, as filed, may reveal.

8.  All rates and charges shown within this contract shall not be changed for the term of this contract unless mutually agreed with a written addendum.

9.  All rates and charges are established by state code.  The rates and charges established herein apply to all points of delivery within the state code.

10.  All rates and charges established herein will apply to all points within the state code whether served direct or indirect (on line/interline) by the carrier.

11.  Awarding of business is to be considered contractual; however, it is not a guarantee of exclusive carriage.

# SHARP ELECTRONICS
# PRICING APPENDIX A
# CONTRACT NUMBER 84608

## LOCATIONS

| | | | |
|---|---|---|---|
| Buena Park, CA | Santa Fe Springs, CA | Newark, NJ | McAllen, TX |
| Carson, CA | Romeoville, IL | Oakland, NJ | Camas, WA |
| Huntington Beach, CA | Lowell, MA | Blauvelt, NY | Vancouver, WA |
| La Mirada, CA | Mahwah, NJ | Memphis, TN | |

## PRICING

This contract will apply on the following shipments which Roadway Express, Inc. (Carrier) originates and is authorized to serve direct. Contract will also apply from or to the point of entry or exit on shipments traveling outside of the contiguous United States. Applies on MC and LTL shipments weighing less than 20,000 pounds.

### INBOUND COLLECT (SERVED DIRECT ONLY), OUTBOUND PREPAID AND THIRD PARTY

| | |
|---|---|
| **Base rates:** | Czar Lite Rating System, effective 10/99 |
| **Rated at:** | 85 to apply on all Classes (Note 1) |
| **Discount:** | 64.0%  (Note 2)<br>59.0%  (Note 3)<br>55.0%  (Note 4) |
| **Minimum Charge Floor:** | $80.00 |

Note 1:    On Inbound, not applicable from Mississauga, Ontario Canada on NMFC #156600 sub 1 through 5.
Note 2:    Not applicable to Home Depot Locations.
Note 3:    Will only apply to Home Depot Locations.
Note 4:    Will only apply for guarantee day shipments.

Unless specifically stated otherwise, all shipments moving under this Agreement are subject to the Minimum Charge Floor.

## GOVERNING PUBLICATIONS

NMFC 100 Series, RDWY 100 Series, RDWY 111 Series, RDWY 301 Series

Exceptions to RDWY 100 Series, refer to Appendix B

## NON APPLICATION

Contract will not apply to Exclusive Use, or when through rates are published (outside of this contract) for shipments outside of the contiguous United States.

## WAIVER OF INCREASE

Linehaul rates and charges will not be subject to increase through May 31, 2007.

Appendix B
SHARP ELECTRONICS

2/13/06

**For a complete application of these services, consult RDWY 100 Rules Tariff at www.roadway.com**

| CODEWORD | DESCRIPTION | | PRICE PER SHIPMENT | | |
|---|---|---|---|---|---|
| | | | MINIMUM CHARGE | PER 100LBS. | MAXIMUM CHARGE |
| IOCG | | International Ocean Market (Retrieval Service Charge). Applies to shipments that reach the port terminal in addition to RCNC. | Consult local service center or Roadway's Web site. | | |
| PRCN | Rerouting – Reconsignment (Marking Fee May Apply) | Partial Reconsignment. Each portion of initial shipment will be considered a separate shipment. Note: Shipments arriving at destination terminal will be subject to the original charge. New BOL/freight bill to be issued for partial not consigned to original consignee. | Linehaul charges from origin to destinations plus fee. | | |
| | | | $ 45.00 | $ 4.50 | $ 450.00 |
| RCHG | | Change in destination before shipment is loaded at the 1st breakbulk terminal or Diversion to Air. Not applicable if shipment will not be transferred at a breakbulk terminal & shipment is reconsigned to new terminal. Use application subject to RCNC. | Linehaul charge from origin to new destination plus fee. | | |
| | | | $ 45.00 | $ 4.50 | $ 450.00 |
| | | New destination is served by same terminal as original destination. | Linehaul charge from origin to new destination plus fee. | | |
| | | | $ 45.00 | $ 4.50 | $ 450.00 |
| RCNC | | New destination is served by different terminal than the original destination and reconsigned after loading at the 1st breakbulk terminal. | Combination of rates via location where stopped plus fee. | | |
| | | | $ 19.70 | | |
| | | Shipments destined to Mexico via Laredo, TX or El Paso, TX when the consignee is a forwarder. | $ 15.40 | If an unsuccessful delivery has occurred see RCHG. | |
| | | International Ocean Market | $ 36.90 | Rerate to point where released or reconsigned. | |
| (No Billing Code Applies) | | Customer picks up shipment at the destination terminal or an intermediate terminal prior to a delivery attempt. | Original charges apply. No rerouting fee. | | |
| REDL | Re-delivery | | $ 40.00 | $ 4.00 | $ 400.00 |
| REWT, INSP | Re-weigh or Inspection (improperly described shipments) | | $ 0.00 | | |
| RTRN | Return to Shipper (in addition to the return linehaul charges) | | $ 19.70 | | |
| SHWD, SHWO | Pickup and Delivery at a Tradeshow | | $ 15.00 | | |
| SS | Single Shipment Charge (more than one shipment-no charge) | | NO CHARGE | | |
| STRO, STRD | Shipment Storage | 3 DAYS FREE | $ 10.00 per day MC$ 25.00 per shpmt | $ 1.00 | $ 100.00 per day |
| TRDO, TRDD | Tradeshow Service Fee from McCormick Place, Chicago, IL; Merchandise Mart, Chicago, IL; 9300 Williams Street, Rosemont, IL; or 9300 Bryn Mawr, Rosemont, IL | | $ 32.90 | | |
| | Tradeshow Service Fee to or from High Point, NC | | $ 38.80 | | |
| TRLR | Dentention Without Power | | 2 free days  $45.00/day thereafter | | |
| XCVG | Extra Cargo Loss Protection, except Mexico | | $ 32.60 | ( $ .60 per $ 100.00 coverage) | |
| | Extra Cargo Loss Protection, while in Mexico | | $ 50.00 | ( $ 1.00 per $ 100.00 coverage) | |

## PREMIUM SERVICE OPTIONS

| CODEWORD | DESCRIPTION | PRICE PER SHIPMENT | | |
|---|---|---|---|---|
| | | MINIMUM CHARGE | PER 100LBS. | MAXIMUM CHARGE |
| GDEL | Guaranteed Service – Day Delivery | No charge | No charge | |
| PRSN | Precision Delivery – After Hours Service | $ 64.50 | | |
| REDL | Precision Delivery – Re-delivery 8 AM – 5 PM Mon.-Fri. | $ 71.50 | $ 12.00 | $ 649.00 |
| | Precision Delivery – Re-delivery 5 PM – 8 AM Mon.-Fri. | $ 108.20 | $ 16.30 | $ 865.30 |
| | Precision Delivery – Re-delivery 9 AM – 3 PM Sat. | $ 108.20 | $ 16.30 | $ 865.30 |
| RMRS | Return Transportation Management | $ 14.00 | | |

## IMPORTANT INFORMATION ABOUT FREIGHT CHARGES

*Bill of Lading*

Roadway Express, Inc. ("Roadway") participates in the National Motor Freight Classification 100 Series ("NMFC"). Unless otherwise agreed to in a written transportation agreement by the

February 14, 2006

# ADDENDUM

### Effective Date: _____
### (To be assigned by Roadway Dept. A29 ONLY)

This Addendum amends the Transportation Contract number 84608, by and between Roadway Express, Inc. and Sharp Electronics Corporation and any existing addenda thereto (collectively, the "Contract"). Roadway Express, Inc. and Sharp Electronics Corporation may be referenced collectively herein as the "Parties."

This Addendum will amend the Contract as follows:

Replace Pricing Appendix A with Pricing Appendix A dated February 13, 2006, attached hereto and incorporated herein.

Roadway Express, Inc. will assign the effective date of this Addendum and notify Customer.

To the extent that the provisions of this Addendum conflict with the terms and conditions of the Contract, the provisions of this Addendum shall govern.

In WITNESS WHEREOF, each of the Parties has set its hand and executed this Addendum as of the date written below.

| **Sharp Electronics Corporation** | **Roadway Express, Inc.** |
|---|---|
| By _____ | By _____ meh |
| Printed Name   Kevin Kenney | Printed Name   Christina F. Lauria |
| Title   Director of National Distribution Operations | Title   Vice President, Pricing & Yield Management |
| Date   2-14-06 | Date   February 14, 2006 |
| Fax   201-512-2468 | Fax   330-258-6097 |
| Phone   201-529-0360 | Phone   330-384-1717 |
| E-mail   kenneyk@sharpsec.com | File & K #   667-0043; 84608 |

*This proposal will expire sixty (60) days from the date first mentioned above if it has not been executed by each of the Parties.*

**For a complete application of these services, consult RDWY 100 Rules Tariff at www.roadway.com**

# EXPLANATION OF ROADWAY EXPRESS ENHANCED SERVICE OPTIONS

| | | |
|---|---|---|
| **BOND** | *In Bond Shipments* | Fee to move import shipments to final destination within the U.S. for customs clearance, or fee to move shipments through the U.S. when the U.S. is not the origin or destination, i.e., goods from Canada traveling through the U.S. to Mexico move in bond; additional linehaul charges may apply depending on the distance between the U.S. Customs office and ultimate consignee. |
| **CNSC** | *Canadian Processing Service* | Fee charged for U.S., Canadian border crossings for all shipments from and to points in Canada. |
| **DRVD** | *Driver & Trailer Ordered, Not Used* | When a pickup is requested and no shipment is tendered. |
| **DTNO, DTND** | *Labor & Equipment Charge* | Applies when a delay of driver and equipment is attributed to the consignor or the consignee. |
| **DVDR** | *Sealed Divider* | Shipments providing dedicated use of a partial trailer. Service is dependent on equipment availability. Requires 24-hour advance notice to servicing terminal and endorsement on bill of lading. |
| **FEE** | *C.O.D. Collection* | Charge for collection of C.O.D. amount. |
| **HLPD, HLPO** | *Labor-Additional* | Extra labor supplied for extra services or during regular and non-regular business hours, Sunday or holidays as requested by the customer, where available. |
| **HOMP, HOMD** | *Residential Pickup & Delivery Service* | Pickup or delivery at a private residence or home-based businesses, apartments, dormitories, estates, farms, ranches, rectories, parsonages, and other locations where the entire premises on which a dwelling for living is located is not open to the walk-in public during normal business hours. |
| **IP, ID** | *Inside Pickup and Delivery* | Pick up or delivery of shipments beyond the front door of customer's facility or dock. Service will be provided to floors above or below the level accessible to Roadway's vehicle only when elevator or escalator service is available and labor, when necessary to operate, is provided without cost to Roadway. |
| **LFTO, LFTD** | *Liftgate* | Fee for lifting or lowering devices requested by the customer to accomplish pickup or delivery. If the Roadway facility does not have a liftgate, the fee will be the cost to rent equipment or to contract with another firm to provide this service. |
| **LTDD, LTDO** | *Limited Access Service* | Pickup or delivery at camps, carnivals, chautauquas, churches, colleges, construction sites, fairs, individual/mini storage units, mine sites, mosques, prisons, schools, synagogues, temples, and universities. Also includes commercial establishments not open to the walk-in public or where an employee is not available to assist in the loading or unloading. |
| | | Will not apply for shipments from or to schools, colleges, or university bookstores with normal receiving hours and where an employee is readily available to assist with loading or unloading. |
| **MARK** | *Marking/Tagging/Stenciling* | Affixing labels, tags, or stenciling as requested or required. |
| **MXSC** | *Mexican Processing Service* | Processing fee for shipments from U.S.-Mexican border location, or from U.S.A. to Mexico. |
| **NTFY** | *Notification & Special Handling* | Notification of the consignee before delivery or shipments held for customer pickup. |
| **ON** | *Order Notify* | Charge for handling shipments moving on Order Notify Bills of Lading. |
| **PRCN, RCHG, RCNC, RLSO, IOCG** | *Rerouting* | Change of destination (Reconsignment) or release to shipper at origin terminal. Does not include additional freight charges incurred. |
| **REDL** | *Redelivery* | Redelivering a shipment after an unsuccessful delivery. |
| **REWT, INSP** | *Reweigh & Inspection* | If freight charges increase by $15.00 or more as a result of inspecting or re-weighing the shipment to determine the correct description and/or weight, a service charge will be added to the invoice. |
| **RTRN** | *Return to Shipper* | Shipments that are not accepted by the original consignee and are returned to the shipper. |
| **STRD, STRO** | *Shipment Storage* | Storage of shipment when delivery cannot be accomplished or at customer's request. |
| **SS** | *Single Shipment* | The sole shipment, weighing or billed at less than 500 pounds, is shipped on a single day from a specific location. |
| **SEGR** | *Sorting & Segregating* | Fee to sort and segregate the shipment. This service is not always available. Contact the local terminal for availability. |
| **SHWD, SHWO** | *Tradeshow Pickup & Delivery Service* | Shipments of exhibition paraphernalia, including exhibition booths or stalls, picked up or delivered to a tradeshow. |
| **TRLR** | *Trailer Rental* | Applies when a delay of equipment without power is attributed to the consignee or consignor. The carrier spots or drops a trailer at the request of the consignor |

Appendix B
SHARP ELECTRONICS

**For a complete application of these services, consult RDWY 100 Rules Tariff at www.roadway.com**

| CODEWORD | DESCRIPTION | | PRICE PER SHIPMENT | | |
|---|---|---|---|---|---|
| | | | MINIMUM CHARGE | PER 100LBS. (unless Noted) | MAXIMUM CHARGE |
| BOND | U.S. Custom In Bond Service | | NO CHARGE | | |
| CBLS | Bill of Lading Correction (change of payment terms) | | $   10.00 | | |
| CNSC | Canadian Processing Service (shipments destined "to" Canada) Alberta, British Columbia, Manitoba, Northwest Territory, Saskatchewan and Yukon | | $   22.50 | $  2.60 | $   85.20 |
| | New Brunswick, Newfoundland, Nova Scotia, Ontario, Quebec, and Prince Edward Island (except points served by Thunder Bay, ON) | | $   14.40 | $  1.20 | $   42.70 |
| | Points served by Thunder Bay, ON | | $   21.70 | $  3.30 | $  132.30 |
| | U.S. Customs "from" Canada | | $   21.50 | | |
| CUBC | Cubic Capacity | | NO CHARGE | | |
| DRVD | Driver Dispatched – No freight tendered, no free time | Dec 1 thru Aug 31 | $   21.80  (per each 15 minutes) | | |
| | | Sept 1 thru Nov 30 | $   27.30  (per each 15 minutes) | | |
| DTNO, DTND | Labor and Equipment | | 3 hours free    $45.00 per hr    Max $225 | | |
| DVDR | Sealed Divider (dedicated use of partial trailer) | | Consult local service center or Roadway's Web site. | | |
| FEE | C.O.D. Collection Fee | | $   25.00 | | $   25.00 |
| HLPO, HLPD | Extra Labor per hour during regular business hours. | | $   45.00 per hr | | |
| HOMP,HOMD | Residential Service other than Boston, Chicago, Los Angeles, NYC, N. Carolina Beach Resort, Oakland Bay, Pittsburgh, Washington DC/MD/VA areas. (See specific ZIP Codes below). | Dec 1 thru Aug 31 | $   62.00 | $  4.60 | $  181.20 |
| | | Sept 1 thru Nov 30 | $   77.50 | $  5.80 | $  226.50 |
| | Residential Service at Zip Codes: Boston 021-022; Chicago 606; Los Angeles 900, 902-908, 910-916, 918; NYC 100-102; N. Carolina Beach Resort 27919, 27926, 27937, 27938, 27944, 27979, 28428, 28445, 28449, 28461-62, 28465, 28469, 28480, 28511-12, 28531, 28553, 28557, 28575, 28577, 28594; Oakland Bay 940-941, 943-944, 946-948, 951; Pittsburgh 15219 and 15222; Washington DC/MD/VA 200-205, 20815-20827, 20901-20916, and 20950, 21402-21499. | Dec 1 thru Aug 31 | $   83.00 | $13.50 | |
| | | Sept 1 thru Nov 30 | $  103.80 | $16.90 | |
| IP, ID | Inside Pickup/Delivery | | $   32.50 | $  3.25 | $  200.00 |
| LFTO, LFTD | Liftgate, | | $   20.00 | $2.00 | $200.00 |
| LTDD, LTDO | Limited Access Pickup & Delivery other than Boston, Chicago, Los Angeles, Mall of America, NYC, N. Carolina Beach Resort, Oakland Bay, Pittsburgh, Washington DC/MD/VA areas. (See specific ZIP Codes below) | Dec 1 thru Aug 31 | $   45.90 | $  4.60 | $  181.20 |
| | | Sept 1 thru Nov 30 | $   57.40 | $  5.80 | $  226.50 |
| | Limited Access Pickup & Delivery at Zip codes: Boston 021-022; Chicago 606; Los Angeles, CA 900, 902-908, 910-916, 918; Mall of America 55425, NYC 100-102; N. Carolina Beach Resort 27919, 27926, 27937, 27938, 27944, 27979, 28428, 28445, 28449, 28461-62, 28465, 28469, 28480, 28511-12, 28531, 28553, 28557, 28575, 28577, 28594; Oakland Bay, CA 940-941, 943-944, 946-948, 951; Pittsburgh, PA 15219 and 15222; Washington DC/MD/VA 200-205, 20815-20827, 20901-20916, and 20950, 21402-21499. | Dec 1 thru Aug 31 | $   83.00 | $13.50 | $  332.00 |
| | | Sept 1 thru Nov 30 | $  103.80 | $16.90 | $  415.00 |
| MARK | Marking, Tagging, or Stenciling – Per Label | | $   30.00 | $     1.50 | per label |
| NTFY | Notification and Special Handling | | NO CHARGE | | |
| ON | Order Notify | | NO CHARGE | | |
| PRDL, PRPU | Loading & Unloading Waterborne Shipments | | Consult local service center or Roadway's Web site. | | |

2/13/06

Appendix B
SHARP ELECTRONICS

**For a complete application of these services, consult RDWY 100 Rules Tariff at www.roadway.com**

**XCVG** | *Excess/Max. Liability-Restricted Articles* | Additional protection against loss beyond the coverage included in the basic freight charge. Released value commodities are not eligible for extra cargo loss protection.

| Freight Move | Standard Liability | Maximum Liability (If Extra Cargo Loss Purchased) |
|---|---|---|
| Within the U.S. and from the U.S. to Canada | Up to $25.00 per pound per package, or $100,000.00 per shipment, whichever is less, except released value commodities | $ 2 million per shipment |
| From Canada | Up to $2.00 per pound (Canadian dollars) | $ 2 million per shipment (Canadian dollars) |
| Between Mexico and the U.S. (if loss or damage occurs in Mexico) | Up to $.50 per pound, $5,000.00 per shipment | $ 50,000.00 per shipment |

## FUEL SURCHARGE

The fuel surcharge applies to net linehaul charges and is adjusted each Wednesday at 12:01 a.m. Eastern time according to the U.S. Department of Energy National Average Diesel Fuel Index in effect on the previous Monday at 4:00 p.m. Eastern time.  The fuel surcharge is determined according to the following table:

| When Fuel is at least | But not greater than | Surcharge will be |
|---|---|---|
| $1.40 | $1.449 | .5% |
| $1.45 | $1.499 | .75% |
| $1.50 | $1.549 | 1.0% |
| $1.55 | $1.599 | 1.5% |
| $1.60 | $1.649 | 2.0% |
| $1.65 | $1.699 | 2.5% |
| $1.70 | $1.749 | 3.0% |
| $1.75 | $1.799 | 3.5% |
| $1.80 | $1.849 | 4.0% |
| $1.85 | $1.899 | 4.5% |
| $1.90 | $1.949 | 5.0% |
| $1.95 | $1.999 | 5.5% |
| $2.00 | $2.049 | 6.0% |
| $2.05 | $2.099 | 6.5% |
| $2.10 | $2.149 | 7.0% |

The FSC schedule continues to escalate at .5% for every $.05 in the price of fuel as guided by the EIA.DOE.GOV website National Avg weekly basis.

## Explanation of Abbreviations:

**LTL** - Actual and billed weight of 1 to 19,999 pounds.
**TL** - Shipments with an actual or billed weight of 20,000 pounds or more.
         Shipments subject to RDWY 100 item 390 (FVCS) (FVCP).
         Shipments subject to RDWY 299 (Roadway Volume Services).

Information regarding the national average diesel fuel index can be obtained via telephone at 1-202-586-6966 or by consulting Roadway's web site (www.roadway.com).  Go to Tariff 100.

Customers using ExpressWORKS™: refer to the software manual for instructions regarding the update of the Fuel Surcharge (FSC) field. For questions regarding ExpressWORKS™, call 1.800.522.3826.

Fuel Surcharge does not apply when both origin and destination are Canada, or when both the origin and destination are Mexico.

Appendix B

SHARP ELECTRONICS

2/13/06

For a complete application of these services, consult RDWY 100 Rules Tariff at www.roadway.com

subject to the terms and conditions of the current bills of lading as shown in the NMFC 100 series.